## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 26 2015, 6:15 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Adam Lenkowsky
Roberts & Bishop
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Juan Humberto Lara-Molina,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 26, 2015

Court of Appeals Case No. 12A02-1409-CR-645

Appeal from the Clinton Circuit Court
The Honorable Bradley K. Mohler, Judge
Cause No. 12C01-1311-FA-1101

**Bradford, Judge.**

# Case Summary

[1] On November 20, 2013, Appellant-Defendant Juan Humberto Lara-Molina was stopped while driving on Interstate 65 in Clinton County. Lara-Molina,

who initially provided a false name to the Indiana State Trooper who stopped him, was found to be in possession of approximately 1238 grams of cocaine and did not have a valid driver's license. Soon thereafter, Lara-Molina was charged with Class A felony dealing in cocaine, Class D felony synthetic identity deception, and Class C misdemeanor operating a vehicle without ever having received a license. Lara-Molina subsequently pled guilty as charged. Lara-Molina's plea agreement left sentencing to the discretion of the trial court and did not include a sentence recommendation from Appellee-Plaintiff the State of Indiana (the "State").

[2] At sentencing, the State notified the trial court that the parties wished to amend Lara-Molina's guilty plea for dealing in cocaine from a Class A felony to a Class B felony and that the State wished to add a recommendation for a seven-year executed sentence. Both the State and Lara-Molina conceded that the trial court would not be bound by this recommended sentence, however, because the original plea agreement contained no such recommendation. The trial court ultimately allowed the parties to amend Lara-Molina's plea to dealing in cocaine from a Class A felony to a Class B felony, but declined to impose the seven-year executed sentence recommended by the State. Finding that the aggravating factors outweighed the mitigating factors and noting that Lara-Molina received a substantial benefit from the reduction of his plea from a Class A felony level to a Class B felony level, the trial court imposed an aggregate eighteen-year executed sentence. We affirm.

# Facts and Procedural History

[3] The factual basis entered during the March 31, 2014 guilty plea hearing provides as follows: on November 20, 2013, Lara-Molina was stopped by Indiana State Police Trooper Ryan Winters while driving a vehicle in Clinton County. At the time he was stopped, Lara-Molina possessed, with the intent to deliver, more than three grams of cocaine. Lara-Molina, who was driving without ever receiving a driver's license, falsely identified himself to Trooper Winters as Juan Carlos Gomez Esparza.

[4] On November 22, 2013, Appellee-Plaintiff the State of Indiana (the "State) charged Lara-Molina with Class A felony dealing in cocaine, Class D felony synthetic identity deception, and Class C misdemeanor operating a motor vehicle without ever receiving a license.[1] On March 31, 2014, Lara-Molina pled guilty as charged. According to the terms of Lara-Molina's guilty plea, sentencing was left to the discretion of the trial court as the State did not make a sentencing recommendation.

[5] The trial court conducted a sentencing hearing on August 18, 2014, during which the State informed the trial court that:

> the history of this case is that Mr. Lara-Molina pleaded guilty to the
> Class A felony … but due to circumstances that have occurred since

---

[1] The State filed an amended charging information on December 2, 2013. The amended charging information is identical to the original charging information filed on November 22, 2013, except that it appears to correct a spelling error that was contained in the original charging information.

the time of the plea, uh, the State now wishes to provide Mr. Lara-Molina with a consideration uh, that is not possible uh, under the potential sentencing for the Class A felony to which he -- he pleaded. And so in order to be able to recommend to the Court uh, the consideration that we wish him to have uh, we uh, would need to -- and then propose to do so today, amend the uh, Count 1, Dealing in Cocaine, a Class A felony, to a Class B felony, uh, carrying a range of penalties of six to twenty years. Uhm, and the recommendation we would then make is that the executed portion of the sentence be uh, seven years. Uh, now that recommendation would be non-binding because we stand here today uh, poised for a sentencing in a situation in which there was no agreement uh, between the parties at the time that the plea agreement was entered. So even if we make a recommendation today at the Class A level, it would not be binding on the Court and we don't propose to make it binding on the Court at the Class B level. But, it is an attempt to uh, be able to make the recommendation to the Court, the consideration that we think uh, we would like Mr. Lara-Molina to have. Now we recognize also and we hope he does that the minute we uh, amend the Class A to a Class B if the court approves that and he is in agreement with it, he gets a fairly substantial consideration anyway because the maximum on a Class B is the minimum on a Class A, and uh, so that -- that's a meaningful opportunity for him. But, at any rate, that's what the State proposes here uh, if the defense table is in agreement with our proceeding in that manner.

Tr. pp. 15-16. Defense counsel indicated that the State's comments were consistent with counsel's understanding. In addition, through the aid of an interpreter, the trial court and Lara-Molina engaged in the following discussion:

The Court: And -- Mr. Lara-Molina, have you been able to understand the attorney's summary and outlining of the changes to the Plea Agreement that they are proposing?

Interpreter: Yes.

The Court: Do you understand that I would not uh, authorize or accept any changes at this point until accepting a plea pursuant to this agreement? And what that means is you've already pled guilty to a

Class A felony.  We're scheduled for sentencing on that Class A felony today.  Uh, the attorneys have further negotiated and are proposing that, that Plea Agreement be modified to a Class -- … So then the Plea Agreement if accepted, would be modified so that the Dealing in Cocaine would be a Class B felony as opposed to Class A felony.  Additionally in the portion of that Plea Agreement that originally said the State would not make a sentencing recommendation, the parties would be making the recommendation that has just been outlined.  Understand though that the Court is not bound by that recommendation.  As an A felony or as you originally pled and were originally charged, the penalty range is anywhere from twenty to fifty years with thirty years being the advisory sentence and the fine possible from Zero to Ten Thousand Dollars.  If the Court would accept this modification, the penalty would range for a B felony would be anywhere from six years to twenty years.  The advisory sentence would be ten years and the fine could range from Zero to Ten Thousand Dollars.  Do you understand those possible penalties both for the charge as it currently stands as an A felony and as a reduced B felony charge that is contemplated with these amendments?

Interpreter:    Yes sir.

The Court:    And again, do you understand that any recommendations to the sentence that would be made either by the attorneys individually or by the attorneys jointly, would be just that, only recommendations and the Court would still have the authority to sentence you within the full range for that [B] felony, which is six to twenty years of incarceration?  Do you understand that?

Interpreter:    Yes.

**** 

The Court:    Other than what I have reviewed with you and what has been outlined by the attorneys, have you been promised anything else, threatened or forced to get you to plead guilty?

Interpreter:    No sir.

The Court:    Have you been able to understand everything I've said through the translation provided by Miss Garza?

Interpreter:    Yes sir.

****

The Court:    Okay. And again just to make sure you're aware of this, if the Court does accept this new plea to a B felony level, the Court has the full range of possible penalties, which would be six to twenty years and the attorneys can make arguments and recommendations, but none of those arguments or recommendations are binding on the Court and the Court will decide upon the pos -- the actual penalty within that six to twenty year range. Do you understand that?

Interpreter:    Yes sir.

Tr. pp. 16-21. Lara-Molina also again admitted that he possessed cocaine, with the intent to deliver, on November 20, 2013.

[6] At the conclusion of the hearing, the trial court allowed Lara-Molina to amend his guilty plea from a plea of guilty to a Class A felony to a plea of guilty to a Class B felony. The trial court, however, found that the seven-year sentence recommended by the State was inadequate, instead sentencing Lara-Molina to an aggregate eighteen-year term. In arriving at this sentence, the trial court found that the aggravating factors outweighed the mitigating factors.[2] The trial court also found that Lara-Molina was a high risk to re-offend and noted that Lara-Molina received a substantial benefit from the reduction of his conviction for dealing in cocaine from a Class A felony level to a Class B felony level.

---

[2] Lara-Molina does not challenge the aggravating and mitigating factors found by the trial court on appeal. The aggravating factors include: Lara-Molina's criminal history, which includes convictions for crimes of violence, several weapons charges, and at least one federal conviction for illegal re-entry; his status as an illegal alien; and the fact that he had previously been deported. The mitigating factors include: Lara-Molina accepted responsibility for his actions by pleading guilty, cooperated with law enforcement, and had family obligations.

# Discussion and Decision

[7] On appeal, Lara-Molina contends that the trial court abused its discretion in sentencing him. Generally, sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*. (quotation omitted).

[8] Specifically, Lara-Molina argues that the trial court abused its discretion by failing to give him an opportunity to withdraw his guilty plea after the trial court determined that it would not impose the seven-year executed sentence that was recommended by the State. The record establishes, however, that both parties understood that the seven-year executed sentence recommendation presented for the first time by the State at sentencing would not be binding upon the trial court.

> Under a "nonbinding" sentence recommendation, the defendant extracts a promise from the prosecutor to advocate the imposition of a particular sentence (or that the prosecutor will remain mute at the sentencing hearing), but the defendant knowingly, voluntarily, and intelligently submits to the agreement with the understanding that the sentence recommendation is "nonbinding" and that he or she is not entitled to withdraw the guilty plea if the trial court rejects the recommended sentence. This type of sentence recommendation is made as another fact relevant to sentencing for the trial court to

consider when it exercises its sentencing discretion.

*Walker v. State*, 420 N.E.2d 1374, 1378 (Ind. Ct. App. 1981); *see also Hedger v. State*, 824 N.E.2d 417, 420 (Ind. Ct. App. 2005) (providing that where the defendant's written plea agreement included no specific sentence term, the trial court was not bound to follow the State's oral sentence recommendation), *trans. denied*.

[9]     Again, both the State and Lara-Molina explicitly stated that they understood that the State's recommendation of a seven-year executed sentence would not be binding on the trial court. After both counsel for the State and defense counsel indicated that the sentence recommendation would not be binding upon the trial court, the trial court, through the aid of an interpreter, engaged in a discussion with Lara-Molina in which the trial court repeatedly asked Lara-Molina whether he understood that the sentence recommendation was nonbinding and sentencing would be left to the trial court. Each time, Lara-Molina indicated that he understood. Lara-Molina further indicated that he had been able to understand everything that the trial court had said through the translation.

[10]    The record clearly demonstrates that all of the relevant parties, including counsel for the State, defense counsel, and Lara-Molina, understood that the seven-year sentence recommendation was not binding upon the trial court and that the trial court retained the discretion to sentence Lara-Molina as the trial court saw fit. We therefore conclude that the trial court acted within its

discretion in sentencing Lara-Molina to an aggravated eighteen-year term without first offering Lara-Molina the opportunity to withdraw his guilty plea.

[11] The judgment of the trial court is affirmed.

Vaidik, C.J., and Kirsch, J., concur.